23-7715 Mollie Marie Flinton v. Acting Commissioner of Social Security inals, you'd like a rebuttal of two minutes. In center we have two minutes, a rebuttal of one minute. All infact, John, I did see that you were on the paper. Gentlemen, way to address me not the words on your face. The all right. And please be seated. We know that SSA's defense that they never violated my client's constitutional rights is wrong. We know that because these applications were filed in 2015. They had an ALJ who had no proper appointment hear the case and decide it. The agency's defense is that that violation disappeared because that same ALJ was properly appointed by the time of remand. When you went before the district court for the first time, had the Supreme Court already decided Lucia? My understanding is that it had. Yeah. 2021 was Lucia. June of 2021, I believe. I thought it was 2018. Excuse me. Lucia, I was thinking of Carr. Yes, 2018. Absolutely, yes. So, I guess my question is this. You had an opportunity, had you wished, to ask the district court at that time for the remedy that you're seeking now, right? If we were to agree with your position now that you could, after Lucia, have an opportunity to seek remand before another ALJ, but not ask for that. Let the case go back before the ALJ, be adjudicated, come all the way back up, and then raise the appointments clause for the first time. Are you effectively guaranteeing yourself two bites at the apple? Basically, a free pass that you can go back, and if you had won before the ALJ the second time entirely, I assume you would not have taken an appeal. But now you're guaranteed that if you don't get all the relief you want, now you come up and say, well, there was an appointments clause issue, now I get a free do-over. So, don't we create a dynamic where we incentivize claimants not to seek remand before a new ALJ if we recognize your position? No, because you'd rather have a new ALJ. And the reality is this. Well, if you'd rather have a new ALJ, why didn't you rather have a new ALJ the first time? I wasn't the representative of this claimant. However. It's not about you. Understood. You know that we often identify a lawyer with a client. My side. Yes. Understood. Well, I'd say this, Your Honor. The key point to understand is this. The party that has the responsibility for maintaining separation of powers is the United States government, not disability claimants. Well, litigants have a responsibility to assert their own rights, and if they don't do so in a timely manner, they often forfeit them. Even constitutional rights, right? Not in the disability context, and I'll explain. We have a very unique, it's a foreign country. It's different than the entire rest. Now, let me ask you this, though. But that's not true. If in the district court here, let's say the second time around, you had not argued an appointments clause challenge, and then you came up to us and raised it here for the first time, as a general matter, we would say that you had forfeited that issue, right? In federal court. Correct. Exactly. So my point is, because you did not raise this the first time in federal court, because you did at a certain point, and again, by you, I mean your side. You were in federal court. You did not ask the district court for this remedy, and it was after Lucia, after this was a known available remedy. Why is it that you did not forfeit it? They forfeited forfeiture. They have not argued that we forfeited this right. So if there's going to be a holding of forfeiture, the forfeiture is by the government. They have never raised that defense at the district court level, nor before this court. What I would say, Your Honor, the key point that I want to make is that the Raper case out of the 11th Circuit and SSA's argument is dependent so much on one particular thing, which is the idea that judges have to hear cases anew when they're remanded. And that's true. That's a really valid point. The problem with this is that valid point is the heart of Justice Breyer's opinion in Lucia. That was a dissent. What controls is the supermajority of six justices, not a well-reasoned dissent. And that six-justice majority specifically held that even if the ALJ has been lawfully appointed by the time of remand, they are prohibited from hearing the case again. If it wasn't, there are a couple of reasons for that, right? One was that if something was being sent back to a judge who had done nothing wrong, there were no errors identified in the judge's processing of the case, but who had simply been improperly appointed and it went back to the same judge again, the judge would naturally just say, yeah, what I said. It would be almost impossible for a judge to reconsider the case anew when all of his or her reasoning had been either officially approved by higher authorities or not challenged by the party. That's not true here, right, in your case, because the judge did make some mistakes and the case was sent back based on those mistakes. And we know that the judge did consider the case anew because it was kind of an entirely different case. There was no cutting and pasting, here's my original opinion, we're fine, we're good. The judge had to and did revisit the case entirely. So that, I think, was the reasoning of the 11th Circuit in RAPER and what's wrong with that distinction? They don't understand disability law and I'm going to make a really key point. This is something the claimant's attorney missed in RAPER and didn't do a good job for the court and I want to do a good job for this court. In disability, unlike maybe any other context, but in disability agency policy, is that in every single case, when a case is remanded, all factual and legal decisions must be determined de novo. So the animating principle, as they call it, which has no basis in the text, the animating principle doesn't exist in the disability context and yet in the Carr litigation, the Supreme Court sent every single one of those cases back to a new ALJ and the government has an obligation to admit this. Every single one of those cases, every single one of the 19-1P cases went back to new ALJs. What we have to presume in any law is that public officials are doing things properly. So when SSA's ALJs, which is true in every single case, when a case is remanded and therefore vacated, there's a specific helix on this, which we cite in our brief, all factual and legal determinations must be made de novo. Despite that, the Supreme Court said, yep, even in the disability context where that's present, you still get a new ALJ and that's what happened in Carr. So let me just see if there are any other questions from the panel right now. If not, why don't we hear from your adversary. I just have one quick question, which is Mr. Raper has sought certiorari in the Supreme Court, right? That is correct, Your Honor. That has not been decided yet. It wasn't the last time I looked. That's correct, Your Honor. I do want to mention that the United States government opposed. Yeah. And so that's the latest update we have. So we would do well, would we not, to wait at least to see whether the Supreme Court grants that petition. If they do, then probably the Supreme Court will tell us what the right answer is and we won't have to stick our necks out and decide the case. If they deny certiorari and leave the circuit split intact, then we would, of course, need to and would promptly decide your case. Do you have any problem with that thought? Well, Your Honor, jeez, I wish I hadn't done all this work. No, I understand what you're saying. I do. Can I make one point before I close and turn it over to counsel? Only if it's in response to Judge Lynch. Otherwise, if you would like, you may spend some of your two minutes of rebuttal now or you may hold that two minutes. Up to you. I'll say very quickly one point. All right. We're timing this. A prior vacated ALJ decision can have a procedural effect, not a substantive effect, but a procedural effect to bar an ALJ from hearing the case again. That's true according to 19-1P. All of the remands due to Carr, it's due to if an ALJ is biased, even though that decision is vacated, they can't hear it again on remand. And another example is two remands. For example, this case is — This is not at all in response to my question, point one. Okay. And point two, of course, two remands is different from one remand, but, you know, we'll hear you on — But bias is one remand. You've spent down on my account 40 of your seconds. That's okay. Thank you, Your Honor. We're going to keep track. All right. Why don't we hear from the government? Good morning, Your Honors. May it please the Court. Elon Stein on behalf of the Acting Commissioner. Your Honors, Lucia does not apply in this context. And Appellant is asking you to expand the holding, Lucia, to an entirely different context. Lucia was concerned with an active, ongoing appointments violation. And there was a timely challenge to that violation. Here, by contrast, when the decision that's at issue on appeal was decided, ALJ Solomon was constitutionally and validly appointed. So what do you make of the statement in Lucia that the remand cannot go to the same ALJ, even if that ALJ is subsequently properly appointed? Because isn't that exactly what happened here? So how do you reconcile the two? The Supreme Court says, well, there's one thing you can't do, and that's what happened here. I think that what's happening there is a concern about rubber stamping. And if you look at what the Supreme Court has said, is that Judge Elliott, in that case, cannot hear the case anew. He's already heard, quote, already both heard Lucia's case and issued an initial decision on the merits. He cannot be expected to consider the matter as though he had not adjudicated it before. Again, doesn't it seem like then you're pushing back on what the Supreme Court said we should do and shouldn't do and saying, well, they weren't really right? That some judges can totally put it out of their mind. And if we can prove that, then even though the Supreme Court said you have to do this, they didn't really mean that. But aren't we stuck with what the Supreme Court told us to do? It wasn't a hint. They may have articulated some purposes for their direction. But are we allowed to say, well, we don't have to follow your direction because we don't think those purposes are universally true? We think that our argument is not that you should not follow Lucia, but rather that it does not apply here. The point is, and I think that the framework to understand what Lucia was doing, which was creating an unusual, a new and really unusual remedy in our system of jurisprudence, was that there was a concern with ongoing violations, ongoing appointments violations. And the remedy was necessary where on remand, the judge would have no reason to think that there was a substantive error. So let's assume we adopt your premise that here, because the ALJ on remand, having been told he made mistakes, changed his decision. And you say, well, the animating purpose is not valid here. If the ALJ on remand here had issued the same decision verbatim, cut and paste the whole thing, would you be making the same argument? I think the threshold argument is that— I get it. He can tell me why later. But take my hypothetical. It had gone back and the ALJ had literally issued the same decision, cut and pasted, as originally decided. Would you be able to make the same argument? I think it would be much more challenging. Let me ask you this. If we agree with your argument today and say, well, because the judge did change the decision, it's okay. Do we then, by buying into your argument, have to get into a case-by-case analysis of how open-minded we think the ALJ was on remand? That if the judge changed a little bit, maybe that doesn't show he was very open-minded. But if he completely reversed himself, then he was very open-minded. Do we get into this case-by-case evaluation of how truly de novo we think the procedure was on remand? We don't think so. We think that the remedy in Lucia arose in a specific context, and it should be confined and limited to that context. Meaning a remand where the only issue identified on remand is the appointments violation. We don't think that the court need to adopt some rule that district judges or magistrate judges are going to be doing comparisons in every instance. You're advocating for a very bright-line rule. Is that correct? That if the only problem with the underlying decision was the appointments clause problem, we follow Lucia. If, on the other hand, there were other reasons for a remand independent of the appointments clause issue. In fact, the appointments clause issue was never raised on the first appeal, and it went back to the same judge with instructions to correct a bunch of errors. In that situation, that's what you're trying to distinguish, right? So it's a question of what the basis for the original remand was, not how novel or rote was the actual decision of the ALJ. We think that that's correct, and that is consistent with what the Supreme Court did in Lucia. And isn't it also the case that if Judge Nardini's hypothetical had happened, the case wouldn't be here because the administrative law judge would have been reversed in a heartbeat, because it was impossible for the ALJ to cut and paste and give a verbatim opinion in light of the fact that he was told he was wrong in what he decided the first time around? That's correct. Another point that I think is worth raising, the Supreme Court in Lucia, the ultimate reasoning that it provided was to preserve incentives for appellants to raise appointments violations. We think, because the court was concerned with open and ongoing appointments violations by federal agencies. Here, within a month, a month after Lucia was decided, the SSA corrected the error by blanket ratifying all of the ALJs. And so the concern of ongoing violations doesn't apply specifically to ALJ Solomon, but also generally at the SSA. This is not an issue, a live issue that the court makes. Can you address the question I was engaging your adversary with, which is the notion of forfeiture? One of the concerns I have, as I explained, is the idea that if a litigant was already before district court after Lucia knew that they could raise the question of the appropriate remedy, a remand before a different ALJ and chose not to, why wouldn't we be encouraging sandbagging at worst, or I suppose at best you would characterize it as a disincentive to necessarily raise these claims, which the Supreme Court has said we're supposed to incentivize, by letting someone go back before the same ALJ, rolling the dice, maybe they win, and then it's all over and happy. But if they lose, then they get a jail-free card and they get a free do-over afterwards. I guess I'd like to hear your response to that, but also I'd like to hear your response to your adversary's point that if there is such a forfeiture argument, the government didn't raise it, and it's true that you can forfeit a forfeiture argument. Could you maybe respond to those two points? I think your first point is a great point. On the second point, I think under Lucia and Carr, it's clear that claimants have an obligation to raise the Appointments Clause issue before it is remedied. May I say that again? So under Lucia and Carr, there is an obligation to timely challenge a violation. Carr says you don't have to do it administratively, but you have to do it in the district court. And under those precedents, there's no discussion of the government being under any obligation to raise this, and without having raised it, if the government doesn't raise it, that the appellant is somehow freed from the obligation. But deal with his argument that you didn't raise – I think in your red brief, you did not argue that the issue had been forfeited. And we typically have a rule that if someone doesn't raise an issue, it can be viewed as forfeited. But if the opponent doesn't argue that it was forfeited, then the forfeiture argument is forfeited. Could you react to that point? Your Honor, what I would say is I think the court can raise these issues independently of what we've argued. And it's true that we didn't raise the argument in our briefs, but we don't think that is dispositive. Am I right in the – that in the government's opposition to the cert petition, it was argued that this is basically a vanishing problem? I don't recall – I mean, I read that a long time ago. You know, we get – we have a lot of cases of this side, so some of them we read all the details a long while ago. Were there – are there any statistics about that or any sense of how often this thing is going to come back and haunt us? I don't have statistics. What I do know is that this issue was rectified six years ago, and so there are dwindling numbers of cases to which this applies. I guess following up on Judge Lynch's question about how many of these things could be in the pipeline, my understanding is that there had been this rule that if – and you're going to have to be helping out on this. I think you both referred to it – is that there was a rule put in place after Lucia that the Appeals Council would remand to a new judge, but it was if – there was an if – there was a certain condition, and maybe it was if someone raised the issue before the Appeals Council or something, that they were not just automatically doing it. Is that still the rule that is administratively in place? Has there been an update to that rule or a modification to that rule? Is the Appeals Council automatically remanding to new ALJs this time around? How does that operate internally? Your Honor, that rule still applies. It hasn't been rescinded. I'm not aware of any competing rules. So that means that if someone doesn't affirmatively ask the Appeals Council to send it back to a different ALJ after their first ALJ was a person who was appointed in violation of the Appointments Clause, the Appeals Council will not sua sponte choose a different ALJ and remand. Is that fair to say? I think that's fair to say. And I think it's worth noting that that applies to decisions that were made before the blanket ratification of judges, so before July 2018. And so similarly, there's a dwindling number of those issues. Okay. I think we've heard your argument. Thank you very much. Why don't we hear it from counsel for the petitioner, or the plaintiff, I suppose we'd call you in this case. We're going to set you to just a minute and a half. I'm going to give you an extra ten seconds, but you spent some of your time up front. Thank you, Your Honor. I want to make one crucial point. You must understand this point above all else. A specific showing of harm, so this comparison between here's the old decision, here's the new decision, do they diverge enough? That's wrong as a matter of law when you're talking about Appointments Clause cases. Look at Carr, look at Lucia, look at Probst, look at Ramsey, look at Circo in the Third Circuit. Harm is presumed when an Appointments Clause violation is at issue. We don't have to show a specific harm. Second, this point about untimeliness of our objection, they did not raise that either in their brief as well. That's forfeited. And this problem continues. I practice in this area every day. I've done more of these Appointments Clause cases than anyone in the country. It keeps coming up because the last guidance SSA gave to their judges was six years ago. That's three years before Carr. If you're doing some of these cases, I'm curious, have you asked for the remedy of remand to a different ALJ when you're before the Appeals Council? Absolutely, Your Honor. And do they generally grant that? Universally, yes. Okay. That's good. I think unless there are any other questions. Just one simple one. With your ‑‑ you have all these other issues of error in this decision. I take it if we agree with you that the Appointments Clause issue requires a remand, you would agree we don't need to reach those issues? I would agree, Your Honor. In other words, if I summed up all the other ‑‑ Then we're back here again. Why did I do all this work? That is really the question. I get it. I get it. You agree that we would not need to reach the substantive issues. That's correct, Your Honor. All right. Well, thank you very much to both of you. Very helpful arguments. And we will take the case under review. Thank you very much.